Eddie LACA, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 08–93–00016–CR.

Court of Appeals of Texas, El Paso.

Jan. 26, 1995.

M. Clara Hernandez, El Paso County Public Defender, El Paso, for appellant.

Jaime E. Esparza, Dist. Atty., El Paso, for state.

Before BARAJAS, C.J., LARSEN, J., and PRESLAR (Retired) C.J., Sitting by Assignment.

## OPINION

LARSEN, Justice.

### NATURE OF THE CASE

This is a murder case. A jury convicted appellant of the murder of Eddie Keeder, and assessed punishment at life imprison-

ment. Appellant brings ten points of error, asserting that the trial court erred by: (1) overruling his motion to suppress his confession because he was illegally arrested without a warrant; (2) admitting his confession into evidence over objection on the same grounds; (3) admitting his confession because he did not receive the Magistrate's warnings required by Article 14.06 of the Texas Code of Criminal Procedure; (4) admitting into evidence photographs of the deceased which were more prejudicial than probative because of their gruesomeness; (5) admitting into evidence photographs of the deceased which were more prejudicial than probative because they were cumulative; (6) denying appellant's challenge of a prospective juror; (7) overruling appellant's motion for mistrial on the grounds the prosecutor commented in argument on appellant's failure to testify; (8) overruling appellant's objection and motion for mistrial as to improper final argument of the prosecutor; (9) refusing a requested jury instruction; and (10) allowing evidence of an unadjudicated extraneous offense during the punishment phase of trial. We affirm.

## I. SUMMARY OF THE EVIDENCE

On June 29, 1992, appellant went to the apartment complex at 3701 Keltner in Northeast El Paso to see his baby son. Appellant was a member of Los Fatherless gang, and he was accompanied by two other members of that gang. The apartment complex was located in the turf of the rival "Barrio Logan Heights Locos" gang. Isela Godinez, the mother of appellant's son, was affiliated with the second gang. During appellant's visit, the Locos learned of his presence, and perhaps ten members gathered in the parking lot of the apartments. Godinez warned appellant he should leave. As appellant and his companions were leaving, they warned the Locos not to throw rocks at their car. The Locos ignored this warning, and threw rocks at the departing car.

After the Fatherless left, the Locos remained around the apartments gathering rocks. Godinez phoned a member of the Fatherless, allegedly to learn if they were going to return to the apartments so she could warn the Locos. Perhaps a half hour later, the Fatherless returned. Godinez informed the Locos the Fatherless were back. The Locos seemed ready for a fight. The Locos fled, however, leaving Omar Mendoza, a friend of that gang, to face the wrath of the Fatherless. The Fatherless asked Mendoza "where he was from?" By this they meant what gang he was from. He told them "nowhere," which meant he was not a gang member. Someone then said, "Well let's just get him anyways."

The Fatherless, including appellant, began beating Mendoza. The appellant hit him with a tire iron. Eddie "Puppet" Keeder, a Loco, then appeared from an alley. The Fatherless began beating Keeder. Appellant struck Keeder in the head with a tire iron some ten or eleven times. The tire iron became stuck in Keeder's head; appellant had to pull it out. Appellant said, "Yo lo mate", which is Spanish for "I killed him." The Fatherless then left.

The police soon arrived at 11:50 p.m. and secured the crime scene. Several possible weapons were scattered about, including a bat, a pipe, and rocks. Various photographs of the crime scene and abandoned weapons were taken. Isela Godinez gave two statements to the police implicating defendant.

The police later found an abandoned vehicle matching the description of that used by the murder suspects, from which they recovered two tire irons and two baseball bats. The four point tire iron and one of the bats were bloodstained. The blood was compatible with the blood type of the deceased.

The next day, appellant was spotted walking on a street in Fatherless turf and arrested. He wore bloodstained white pants and a "Fatherless Gang" T-shirt. Appellant confessed to the murder later the same day.

### A. Suppression of Confession

■ Our decision in this case is based on the testimony adduced at the hearing on defendant's motion to suppress evidence, and the evidence adduced at the suppression hearing is viewed in the light most favorable to the trial court's ruling. *Perez v. State*, 818 S.W.2d 512, 514 (Tex.App.—Houston [1st

Dist.] 1991, no pet.). The trial judge is the sole and exclusive trier of facts at a hearing on a motion to suppress. *Romero v. State,* 800 S.W.2d 539 (Tex.Crim.App.1990); *Cannon v. State,* 691 S.W.2d 664 (Tex.Crim.App. 1985), *cert. denied,* 474 U.S. 1110, 106 S.Ct. 897, 88 L.Ed.2d 931 (1986); *Hawkins v. State,* 628 S.W.2d 71 (Tex.Crim.App.1982).

■ On appeal, a reviewing court does not engage in its own factual review but decides whether the trial judge's fact findings are supported by the record. *State v. Giles,* 867 S.W.2d 105, 107 (Tex.App.—El Paso 1993, pet. ref'd). If the record supports the findings, this Court is not at liberty to disturb the trial court's findings and, on review, we address only the question of whether the trial court improperly applied the law to the facts. *Romero,* 800 S.W.2d at 543; *Self v. State,* 709 S.W.2d 662, 665 (Tex.Crim. App.1986); *Johnson v. State,* 698 S.W.2d 154, 159 (Tex.Crim.App.1985), *cert. denied,* 479 U.S. 871, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986). Furthermore, we must consider the totality of the circumstances in determining whether the trial court's findings are supported by the record, and the findings will not be disturbed absent a clear abuse of discretion. *Dancy v. State,* 728 S.W.2d 772, 777 (Tex.Crim.App.), *cert. denied,* 484 U.S. 975, 108 S.Ct. 485, 98 L.Ed.2d 484 (1987).

■ If the trial judge's decision is correct on any theory of law applicable to the case, however, it will be sustained. *Romero,* 800 S.W.2d at 543; *Calloway v. State,* 743 S.W.2d 645, 651–52 (Tex.Crim.App.1988); *Spann v. State,* 448 S.W.2d 128, 130 (Tex.Crim.App. 1969); *Moreno v. State,* 170 Tex.Crim. 410, 341 S.W.2d 455, 456 (1960). This principle holds true even though the trial judge gives the wrong reason for his decision, *Salas v. State,* 629 S.W.2d 796, 799 (Tex.App.—Houston [14th Dist.] 1981, no pet.), and is especially true with regard to the admission of evidence. *Romero,* 800 S.W.2d at 543; *Dugard v. State,* 688 S.W.2d 524, 530–31 (Tex.Crim. App.1985).

### 1. Warrantless Arrest

■ Appellant's first and second points of error assert that his confession is inadmissible as the product of an illegal warrantless arrest. Generally, law enforcement officers must obtain a warrant prior to taking someone into custody. *Crane v. State,* 786 S.W.2d 338, 346 (Tex.Crim.App.1990). At the suppression hearing, the State argued that the exception to the warrant requirement contained in Article 14.04 applied to the arrest. Article 14.04 provides: "Where it is shown by satisfactory proof to a peace officer, upon the representation of a credible person, that a felony has been committed, and that the offender is about to escape, so that there is no time to procure a warrant, such peace officer may, without warrant, pursue and arrest the accused." TEX.CODE CRIM.PROC.ANN. art. 14.04 (Vernon 1977). The rule breaks down into four elements:

(1) the person who gives the information to the peace officer must be credible;

(2) the offense must be a felony;

(3) the offender must be about to escape; and

(4) there must be no time to procure a warrant.

*Nelson v. State,* 855 S.W.2d 26, 30 (Tex. App.—El Paso 1993, no pet.), citing TEX. CODE CRIM.PROC.ANN. art 14.04; *Fry v. State,* 639 S.W.2d 463, 469 (Tex.Crim.App.1982), *cert. denied,* 460 U.S. 1039, 103 S.Ct. 1430, 75 L.Ed.2d 790 (1983); cf. *Dejarnette v. State,* 732 S.W.2d 346, 349 (Tex.Crim.App.1987) (holding Article 14.04 requires (1) the police officer have satisfactory proof a felony was committed; (2) satisfactory proof the person arrested is the offender; and (3) evidence the offender is about to escape so that there is no time to procure a warrant).

Appellant was arrested by Officer Munoz of the El Paso Police Department the day after the murder. Munoz was present at the murder scene the night before and had seen the victim's body. He personally interviewed Godinez, and procured from her a statement at 2:25 a.m. on June 30. At 5:30 a.m., Godinez gave a second statement to the police. The second statement described the murder in essentially the same terms, except that Godinez now named appellant as the killer. Both statements placed appellant at the altercation prior to the murder, and named him as a member of the Fatherless gang.

Officer Munoz and other officers were debriefed later in the morning, and he read both statements of Godinez then. Appellant was named as a suspect at that debriefing. A description of appellant was provided to Munoz: young, 18, bald headed (shaved), and thin. After debriefing, Munoz went on patrol in Fatherless turf, seeking a confidential informant. He did not find the informant, but he did find the appellant and a companion walking on the street. Appellant matched the description given Munoz earlier, and was wearing a Fatherless gang T-shirt. Munoz was in plain clothes and in an unmarked vehicle. Munoz left his car, without his gun, and approached the two, identifying himself as a police officer. He asked them about a different murder the night before. He then asked them their names; the appellant identified himself as Eddie Martinez.[1] Later he identified himself as Eddie Laca. Munoz noted that there was blood on appellant's white pants. Munoz then detained the two for the murder in this case. He testified that he was afraid the two would flee if he did not arrest them immediately, and that it would take one to two hours to procure a warrant. He called other units to the scene before arresting them, as he was afraid they would flee if he tried to arrest them without help.

◼ Appellant asserts the State failed its burden as to elements one, three, and four of the test as laid out in *Nelson*. 855 S.W.2d at 30. Appellant first challenges Godinez's credibility, arguing that her two differing statements given early in the morning after the murder disqualify her as a "credible person" for the purposes of Article 14.04. This Court has held, following the Court of Criminal Appeals, that an identified private citizen whose only contact with the police results from witnessing a criminal act is inherently credible. *Nelson*, 855 S.W.2d at 30, citing *Esco v. State*, 668 S.W.2d 358, 360–61 (Tex. Crim.App. [Panel Op.] 1982). Here, Godinez was an identified citizen who witnessed the crime. There is no allegation she was in the employ of the police as an informant. The only material difference between her two statements was that she gave false names for the attackers in the first statement. The

trial court's implied finding that Godinez was credible was supported by evidence contained in the statements. We decline to disturb this finding.

◼ Appellant's more serious challenge to the arrest goes to element three of the *Nelson* test, which requires that an offender be about to escape. *See Nelson*, 855 S.W.2d at 30. The element does not require a showing that an offender is in fact escaping; it requires a showing of satisfactory proof "offender is about to escape, so that there is no time to procure a warrant...." *Fry v. State*, 639 S.W.2d 463, 476 (Tex.Crim.App. 1982) (opinion on rehearing); *see Dejarnette*, 732 S.W.2d at 353. Satisfactory proof entails a factual showing equal to constitutional probable cause. *Amores v. State*, 816 S.W.2d 407, 413 & n. 9 (Tex.Crim.App.1991); *Tribble v. State*, 792 S.W.2d 280, 284 (Tex.App.— Houston [1st Dist.] 1990, no pet.). That Godinez said nothing about appellant escaping does not end the inquiry; Munoz, the arresting officer, can be a "credible person" for the purposes of the test. *Dejarnette*, 732 S.W.2d at 351. Therefore, we must analyze the facts that could give Munoz probable cause to believe appellant was about to escape. The record shows: (1) appellant was walking on a public street in Fatherless turf; (2) Officer Munoz passed the appellant and his companion on the street, and turned around and came back to them; (3) Munoz left his vehicle and approached them, identifying himself as a police officer; (4) Munoz questioned the two about another murder in that area the night before; (5) Munoz requested their identities; (6) appellant gave Munoz a false name; (7) appellant admitted his real name; (8) Munoz noticed clearly visible blood stains on appellant's white pants and his tennis shoes; (9) Munoz testified he thought the two would flee if he left to get a warrant; (10) Munoz testified that appellant and his companion were aware they were the subject of investigation because of the situation. We note that Munoz did **not** tell appellant he was a suspect in the Keeder murder until after he arrested appellant. Based upon these facts, we agree with the implied finding of the trial

---

1. Appellant's mother's name is Martinez.

court that Officer Munoz had probable cause to believe the offender was about to escape.[2]

■ Finally, appellant challenges the finding that there was no time to procure a warrant. *Nelson*, 855 S.W.2d at 30. Munoz testified it would take him one to two hours to procure a warrant for appellant's arrest. Because there was probable cause to believe appellant was about to escape, and it would take Munoz one to two hours to procure a warrant, we agree with the trial court there was probable cause for Munoz to believe there was no time to procure a warrant.

■ Furthermore, even if the warrantless arrest was not proper under Article 14.04, we believe the confession would be admissible under the attenuation doctrine. Evidence obtained in violation of the law is normally excluded. TEX.CODE CRIM.PROC. ANN. art. 38.23(a) (Vernon Supp.1994). When the evidence is sufficiently attenuated from the illegal conduct, however, it is not "obtained" from that conduct and is admissible. *Johnson v. State*, 871 S.W.2d 744, 750 (Tex.Crim.App.1994). The examination of attenuation is based upon four factors: (1) whether *Miranda* warnings were given; (2) the temporal proximity of the arrest and the confession; (3) the presence of intervening circumstances; and (4) the purpose and flagrancy of the official misconduct. *Id.* at 751. All four factors must be considered and no one factor is dispositive. *Id.*

■ The record clearly reflects that *Miranda* warnings were given appellant. Attached to his confession is his signed *Miranda* card. Munoz testified that he gave appellant *Miranda* warnings. The first factor weighs in favor of attenuation. Appellant was arrested at approximately 12:45 p.m. on June 30, 1992. Appellant began his confession to the police at 1:42 p.m. The confession was completed at 2:40 p.m. The approximate two hour spread between arrest and confession weighs in favor of exclusion. *State v. Johnson*, 843 S.W.2d 252, 259 (Tex. App.—Texarkana 1992), *aff'd*, 871 S.W.2d 744

(Tex.Crim.App.1994). As regards the third factor, the record reflects that an outstanding arrest warrant existed for appellant. This sways the third factor in favor of admission. See *Johnson*, 843 S.W.2d at 259. To this is added the fact that appellant was wearing evidence of the crime when detained. The third factor, therefore, weighs clearly in favor of admission of the confession. As regards the fourth factor, we note that Munoz did not inform appellant he was suspect in the Keeder murder until after he was arrested. Munoz did not do this as he was unarmed and afraid that appellant would flee. Furthermore, appellant was named as the killer by an eyewitness familiar with him, Godinez, whose general description of the crime was corroborated by Munoz's own view of the crime scene; appellant was found by Munoz, matching the description given, wearing bloodstained clothes such as could be expected after such a crime. This was not a case of "round up the usual suspects." Factor four weighs in favor of admission. Of the *Johnson* test, as applied in this case, three of the four factors weigh in favor of admission, and the relative balance of all those factors weighs in favor of admission. Thus, we find that appellant's confessions were attenuated from his alleged illegal arrest. Appellant's Points of Error One and Two are overruled.

### 2. Legality of Confession

■ Appellant's third point of error challenges the legality of the confession admitted into evidence against him at trial. Specifically, he challenges the confession on the grounds that the magistrate warnings required by Articles 15.17(a) and 38.22, § 2(a) of the Code of Criminal Procedure were not given to appellant prior to his confession. However, appellant conveniently overlooks the provision in Article 38.22, § 2(a) allowing the person who receives the statement to give the warnings. TEX.CODE CRIM.PROC. ANN. art. 38.22, § 2(a) (Vernon 1979); *Self v. State*, 709 S.W.2d 662, 667 (Tex.Crim.App.

2. A probable cause finding is supportable in this case because of the location where appellant was found, the fact that he was wearing evidence of the crime, and the fact that the encounter with Munoz was sufficient to inform appellant that he

was the subject of investigation. See *Dejarnette*, 732 S.W.2d at 353; *West v. State*, 720 S.W.2d 511, 517 (Tex.Crim.App.1986), *cert. denied*, 481 U.S. 1072, 107 S.Ct. 2470, 95 L.Ed.2d 878 (1987).

1986); *Owens v. State,* 875 S.W.2d 447, 450 (Tex.App.—Corpus Christi 1994, no pet.). Officer Molinar testified that he took appellant's confession. Molinar further testified that he gave appellant *Miranda* warnings. Appellant signed the *Miranda* card attached to his confession. The confession reflects that appellant received *Miranda* warnings. Because appellant received the warnings required by Article 38.22, § 2, Point of Error Three is overruled.

## B. Photographs of Deceased

Appellant asserts in his fourth and fifth points of error that the trial court erred in admitting photographs of the deceased which were more prejudicial than probative, and which were cumulative. Appellant and the State combined their arguments for these points, so we also address them together.

Appellant objected to the admission of State's Exhibits 3, 4, 5, and 8 on the grounds that they were more prejudicial than probative.[3] This objection was overruled.

■■■■ Relevant evidence is generally admissible. TEX.R.CRIM.EVID. 402. Relevant evidence may be excluded, however, when its probative value is substantially outweighed by the danger of unfair prejudice. TEX. R.CRIM.EVID. 403. Admissibility of relevant evidence is favored by the rules, and it is presumed that relevant evidence is more probative than prejudicial. *Long v. State,* 823 S.W.2d 259, 271 (Tex.Crim.App.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 3042, 120 L.Ed.2d 910 (1992); *Montgomery v. State,* 810 S.W.2d 372, 389 (Tex.Crim.App.1990) (opinion on rehearing). Photographs of the deceased which are limited in number and

reflect the manner of the deceased's death and the appellant's mental state are relevant, and more probative than prejudicial. *Long,* 823 S.W.2d at 273. State's Exhibits 3, 4, 5, and 8 all serve to show that Keeder was murdered by multiple blows to the head from a variety of weapons including rocks, bats, and a pipe. As such, they are more probative than prejudicial. Appellant's Point of Error Four is overruled.

■■■■ Appellant challenges the admission into evidence of State's Exhibits 35, 36, 37, 38, 39, and 40[4] on the grounds that they are cumulative. Appellant objected to the admission of the photos at trial on that ground and was overruled. Relevant evidence is generally admissible. TEX.R.CRIM.EVID. 402. Relevant evidence may be excluded, however, if "its probative value is substantially outweighed by the danger of unfair prejudice ... or needless presentation of cumulative evidence." TEX.R.CRIM.EVID. 403; see *Long,* 823 S.W.2d at 275. As to the pictures depicting the wounds on the deceased's forehead, these are relevant in connection with Dr. Contin's testimony and with appellant's confession to show that he dealt blows to the deceased's head with a tire iron, including a blow which caused the tire iron to become stuck in the deceased's head. The photos showing the Y shaped wound atop the deceased's head, although perhaps duplicative, do not rise to the level of cumulation shown in *Long.* C.f. *Long,* 823 S.W.2d at 274–75 (holding some twenty-two autopsy photos showing sutured chopping wounds on the bodies of three victims were cumulative and prejudicial, although harmless).

---

3. State's Exhibit 3 is a crime scene photograph showing the deceased's outstretched arm and a rock in a pool of blood. State's Exhibit 4 is a crime scene photograph showing the deceased from a distance, a large amount of blood, bloody footprints, and a discarded baseball bat. State's Exhibit 5 is a crime scene photograph of the deceased's head showing some of the wounds. State's Exhibit 8 is a crime scene photograph showing the deceased's body from a distance, the discarded baseball bat, and a discarded pipe.

4. State's Exhibit 35 is an autopsy photograph of the deceased showing a wound atop his head resembling the letter "Y". State's Exhibit 36 is an autopsy photograph showing the three

wounds to the deceased's forehead after blood had been cleaned from them. State's Exhibit 37 is an autopsy photograph showing the deceased's forehead wounds prior to cleaning. State's Exhibit 38 is an autopsy photograph showing the wound atop the deceased's head after the wound was cleaned and hair around the wound was trimmed back. State's Exhibit 39 is an autopsy photograph emphasizing the major wound on the deceased's forehead, through which his brain is visible. State's Exhibit 40 is an autopsy photograph showing the overall appearance of the deceased's head after cleaning, and showing the autopsy file number given by Dr. Juan Contin.

Furthermore, if there was error in the admission of these photographs, we believe it was harmless. Reviewing error pursuant to the harmless error rule, we look at the following factors:

(1) the source of the error;

(2) the nature of the error;

(3) whether or to what extent it was emphasized by the State;

(4) the probable collateral implications of the error;

(5) the weight a juror will probably give to the error; and

(6) whether declaring the error harmless would encourage the State to repeat it with impunity. *Harris v. State*, 790 S.W.2d 568, 587 (Tex.Crim.App.1989).

Guided by the above factors, and any other considerations suggested by the facts of the case, the error and all its effects must be isolated. *Id.* at 588. The determination then is whether a rational trier of fact might have reached a different result if the error and its effects had not resulted. *Id.* Examined in light of this standard, we believe the error presented, if any, is harmless. The same wounds were presented to the jury in similar photographs, and only two sets are arguably similar enough to raise questions of cumulation. We conclude that no rational trier of fact would have reached a different conclusion absent the allegedly cumulative photos. Appellant's fifth point of error is overruled.

### C. Challenge to Juror

Appellant's sixth point of error asserts that the trial court erred in failing to sustain his challenge for cause to juror number 18. The State argues that appellant waived this error, if any, by failing to request additional strikes. To preserve error because of a trial court's denial of a requested challenge for cause, four requirements must be satisfied at trial. *Burks v. State*, 876 S.W.2d 877, 892–93 (Tex.Crim.App.1994), citing *Jones v. State*, 833 S.W.2d 118, 123 (Tex. Crim.App.1992); *Demouchette v. State*, 731 S.W.2d 75, 83 (Tex.Crim.App.1986), *cert. denied*, 482 U.S. 920, 107 S.Ct. 3197, 96 L.Ed.2d 685 (1987). First, appellant must demonstrate that he was forced to use a peremptory strike on a juror who was challengeable for cause. *Id.* Additionally, he must prove that he exhausted all of the peremptory strikes he was given. *Id.* Next, appellant must show that he requested additional peremptory strikes and that this request was denied. *Id.* Finally, he must demonstrate that he was forced to accept a juror whom he found objectionable. *Id.* The record does reflect that appellant requested an additional strike during the voir dire of juror 18, and that appellant found juror 46 objectionable, after all strikes were exercised, because that juror knew a judge. Appellant has preserved his claim on appeal.

A juror may be challenged for cause by either party if he or she has a bias or prejudice in favor of or against the defendant. Tex.Code Crim.Proc.Ann. art. 35.16(a)(9) (Vernon 1989). However, a trial court's decision to deny a defendant's challenge for cause should not be overturned unless, in light of the entire voir dire examination of the prospective juror, bias or prejudice has been established as a matter of law. *Little v. State*, 758 S.W.2d 551, 556 (Tex. Crim.App.1988), *cert. denied*, 488 U.S. 934, 109 S.Ct. 328, 102 L.Ed.2d 346 (1988). If bias or prejudice is not established as a matter of law, all of the juror's voir dire answers must be reviewed to determine whether they may set aside their views and honestly and truthfully follow the juror's oath. *Anderson v. State*, 633 S.W.2d 851, 854 (Tex.Crim.App.1982); *Williams v. State*, 773 S.W.2d 525, 536 (Tex.Crim.App.1988), *cert. denied*, 493 U.S. 900, 110 S.Ct. 257, 107 L.Ed.2d 207 (1989). The trial judge is in the best position to make this determination and his ruling will therefore be given due deference. *Farris v. State*, 819 S.W.2d 490, 501 (Tex.Crim.App.1990), *cert. denied*, 503 U.S. 911, 112 S.Ct. 1278, 117 L.Ed.2d 504 (1992); *Fearance v. State*, 771 S.W.2d 486, 501 (Tex. Crim.App.1988); *Mooney v. State*, 817 S.W.2d 693, 701 (Tex.Crim.App.1991). The standard of review turns on whether the trial court abused its discretion by overruling the challenge for cause. *Little*, 758 S.W.2d at 556; *Fuller v. State*, 827 S.W.2d 919, 924 (Tex.Crim.App.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 3035, 125 L.Ed.2d 722 (1993); *Cooks v. State*, 844 S.W.2d 697, 709 (Tex.

Crim.App.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 3048, 125 L.Ed.2d 732 (1993). In determining abuse of discretion, this Court shall review the record and determine if it supports the trial court's implied finding that the prospective juror's views would not "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Wainwright v. Witt,* 469 U.S. 412, 424, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985); *Cockrum v. State,* 758 S.W.2d 577, 592 (Tex.Crim.App.1988).

■■■ The juror in question testified during voir dire that in some instances, he would give extra credibility to testifying police officers. The juror was questioned twice, and testified as follows:

> MR. DEKOATZ: Here's kind of an interesting question. Question is, are you going to believe a police officer who testified over the word of somebody else by the mere fact that they are police officers or a law enforcement agent?
>
> . . . . .
>
> JUROR [No. 18]: With reservation. If the police officer has a specific expertise, ie, forensic science background and presents evidence in that, you know, under that situation, I definitely believe him. Other than that, once again, they do have greater powers. They're trained to observe more specifically and I weigh them with a more—a little bit more depending on the question and certain circumstances. Basically what it boils down to.
>
> MR. DEKOATZ: Nineteen?
>
> JUROR [No. 19]: I have to agree with him.
>
> MR. DEKOATZ: Okay. And I don't want to mislead anyone. Again, the question is simply will you automatically believe the word of a police officer over that of another individual by the mere fact that they are police officers and I'm not qualifying the question with expertise and that sort of thing.
>
> JUROR [No. 19]: Okay. Then no.
>
> MR. DEKOATZ: It's a good point. Juror Number 18, maybe you're going to dispute that.
>
> JUROR [No. 18]: I think the key word is automatically. I couldn't automatically, but I would weigh this person's background compared to this person's background in making a decision.
>
> . . . . .
>
> MR. DEKOATZ: Yes, sir. Again, my concern would be that perhaps you would give a police witness more credibility or you would lean in favor of his testimony as opposed to a non-police officer. I'm not sure I really understand your answer. If you could please help us and let us know, I would appreciate it.
>
> JUROR [No. 18]: Well, that would be for both if it was technical information. I would definitely give him the credence as opposed to that of who you had to encounter him.
>
> MR. DEKOATZ: Thank you very much.
>
> THE COURT: If you would move over here just a little bit. You got a low voice and they don't carry as well.
>
> MR. DEKOATZ: Thank you, sir.
>
> THE COURT: Mr. Medrano?
>
> MR. MEDRANO: Sir, the question is, if an officer is called and as he's walking up to the witness stand, does he have automatic credibility with you or would you listen to the evidence and judge what credibility based on the testimony and not on who the person is?
>
> JUROR: I take that as two separate distinct questions.
>
> MR. MEDRANO: Okay.
>
> JUROR: All right. I still respond to the first question as it was asked as I did. As far as police officers are concerned, I don't know too many local police.
>
> I have a got [sic] a nephew that's a Chief of Police in Washington. I've got a brother-in-law that's part of the—a California state policeman that's part of the gang—you know—the task force.
>
> A good friend of mine is in charge of the Secret Service and another one is a senior agent in charge of the FBI. That's my exposure to local law enforcement.
>
> I tend to think that the majority of people in law enforcement, because I have

taken some of the tests and seen some of the tests that have been taken, are much better in being accepted as a law enforcement officer and they have much better observation skills and whatever than someone who has not been put in that situation, so I tend to give the police officers an edge of credibility unless it was something that could be proven that was, you know, like a dropped gun or something like that.

MR. MEDRANO: Okay.

. . . . .

MR. DEKOATZ: Challenge for cause, Your Honor.

THE COURT: Denied.

MR. DEKOATZ: May I please have an extra peremptory?

THE COURT: Denied.

Appellant likens this juror to the juror in *Hernandez v. State*, 563 S.W.2d 947, 950 (Tex.Crim.App.1978), who testified during voir dire that: "I don't think a police officer would tell a falsehood from the witness stand." *Id.* The State relies on cases of the Third Court of Appeals distinguishing a juror who testifies as in *Hernandez* from a juror who testifies that the police are more likely to tell the truth. E.g., *Arnold v. State*, 778 S.W.2d 172, 183 (Tex.App.—Austin 1989), *aff'd*, 853 S.W.2d 543 (Tex.Crim.App.1993). Juror No. 18's testimony centers around the training police officers receive, and their ability to note details. He denies police officers are entitled to automatic credibility, and he did not testify that he did not believe police officers would lie. In fact, his statement about "dropped guns" indicates he believes officers can lie, and that he would accept proof presented that an officer did lie. The record does not reflect that the trial judge abused her discretion in denying appellant's challenge for cause of Juror No. 18. Appellant's sixth point of error is overruled.

### D. Improper Jury Argument

#### 1. Comment on Failure to Testify

Appellant's seventh point of error asserts that the trial court erred in denying his motion for mistrial on the grounds that the prosecutor commented on appellant's failure to testify at trial. The State argues that the prosecutor's comment was not a comment on the appellant's silence at trial, and that if it was such a comment, it was indirect and harmless.

Appellant's objection was to the following argument by the prosecutor:

MR. MEDRANO: We have to show that but for the defendant's conduct, operating either alone or concurrently with another cause produced this result unless we have failed to show that the defendant's actions were clearly insufficient.

Remember the hypothetical. Did he merely walk up to the feet of Eddie Keeder and kick him and it's uncontroverted. He can come up here and tell you that it's not true, but it's uncontroverted—

MR. DEKOATZ: Object to that as a comment on the Fifth Amendment privilege, Your Honor.

THE COURT: Rephrase that statement.

MR. DEKOATZ: Overruled, Your Honor?

THE COURT: No. It's sustained.

MR. DEKOATZ: Move to disregard.

THE COURT: I will instruct the jury to disregard the last comment from the district attorney.

MR. DEKOATZ: Move for mistrial.

THE COURT: Denied.

MR. MEDRANO: It is uncontroverted that Dr. Contin's testimony that the actions in this case, including the defendant's, were clearly sufficient to produce the result of death.

The State argues that in context, the prosecutor's comment merely shows that the appellant produced no evidence refuting the State's evidence that blows the appellant struck with the tire iron killed Keeder. The State's alternative argument is that the comment amounted to an indirect reference at most.

Article 38.08 of the Texas Code of Criminal Procedure, prohibits comment on an accused's right to remain silent and his failure to testify. Both the state and federal constitutions have established this right. See U.S. CONST., AMEND. V; TEX. CONST. art. I, § 10; *Jones v. State*, 693 S.W.2d 406, 407 (Tex.Crim.App.1985). In order for the argu-

ment of the state's attorney to violate this right, the language used must be looked at from the standpoint of the jury. *Id.* at 406. Any reference to the accused's failure to testify must be clear, an implied or indirect allusion is not sufficient. *Koller v. State,* 518 S.W.2d 373, 375 (Tex.Crim.App.1975); *Ramos v. State,* 419 S.W.2d 359, 367 (Tex.Crim. App.1967). The test to be applied is whether the objectionable argument was harmless beyond a reasonable doubt. TEX.R.APP.P. 81(b)(2); *Chapman v. California,* 386 U.S. 18, 22, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). In making this determination, we look at all the evidence. *Clemons v. State,* 605 S.W.2d 567, 571 (Tex.Crim.App.1980).

▮▮▮▮ The trial judge sustained the Assistant Public Defender's objection to the argument, and instructed the jury to disregard the prosecutor's improper jury argument. We agree with the trial judge that the reference to appellant's failure to testify was clear. When an instruction to disregard is given, however, the trial court's denial of a mistrial is error only when the argument is extreme, manifestly improper, injected new and harmful facts into the case, or violated a mandatory statutory provision and was thus so inflammatory that its prejudicial effect cannot be cured by a judicial instruction to disregard. *Long v. State,* 823 S.W.2d 259, 267 (Tex.Crim.App.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 3042, 120 L.Ed.2d 910 (1992); *Harris v. State,* 866 S.W.2d 316, 326 (Tex.App.—San Antonio 1993, pet. ref'd). If the instruction given can be said to have removed the prejudicial effect of the improper comment, no error results from the overruling of a motion for mistrial. *Washington v. State,* 822 S.W.2d 110, 118 (Tex.App.—Waco 1991), *rev'd on other grounds,* 856 S.W.2d 184 (Tex.Crim.App.1993); see *Long,* 823 S.W.2d at 267. We hold that the instruction to disregard cured the improper comment.

We must still examine the improper comment to determine if it represents harmful error. Reviewing error pursuant to the harmless error rule, we look at the following factors:

(1) the source of the error;

(2) the nature of the error;

(3) whether or to what extent it was emphasized by the State;

(4) the probable collateral implications of the error;

(5) the weight a juror will probably give to the error; and

(6) whether declaring the error harmless would encourage the State to repeat it with impunity. *Harris,* 790 S.W.2d at 587.

Guided by the above factors, and any other considerations suggested by the facts of the case, the error and all its effects must be isolated. *Id.* at 588. The determination then is whether a rational trier of fact might have reached a different result if the error and its effects had not resulted. *Id.* Examined in light of this standard, we believe the error, if any, presented is harmless. Point of Error Seven is overruled.

## 2. Improper Argument

Appellant's eighth point of error asserts that the prosecutor made improper final argument. The State argues that the argument was proper as a plea for law enforcement.

Appellant asserts two different statements of the prosecutor amounted to improper argument. We will address the arguments in the order they were made. The following exchange occurred during final argument:

MR. MEDRANO: Why do we show you pictures of what the defendant did? Because unfortunately, ladies and gentlemen, unfortunately, it's reality. Kids are dying in our streets.

MR. DEKOATZ: I'm going to object to that, Your Honor, as outside the record, prejudicial, seeking to obtain a conviction on something that's not in the record.

THE COURT: Sustained.

MR. DEKOATZ: Move to disregard.

THE COURT: Jury will disregard the last statement by the prosecutor.

MR. DEKOATZ: Move for mistrial.

THE COURT: Denied.

▮▮▮▮ Proper jury argument consists of: (1) summation of the evidence; (2) rea-

sonable deductions from the evidence; (3) answer to argument of opposing counsel; and (4) a plea for law enforcement. *Alejandro v. State,* 493 S.W.2d 230, 231–232 (Tex. Crim.App.1973). The trial judge sustained appellant's objection, and instructed the jury to disregard the prosecutor's comment "kids are dying in our streets."

Initially, we note that we do not necessarily agree with the trial court that this was improper argument. It is common knowledge that children are dying in our streets, caught in the crossfire of gang violence. Matters of common knowledge may be incorporated into final argument without express support in the evidence. *Carter v. State,* 614 S.W.2d 821, 823 (Tex.Crim.App.—1981); *Bella v. State,* 792 S.W.2d 542, 543 (Tex.App.—El Paso 1990, no pet.). Moreover, the argument is clearly within the realm of pleas for law enforcement. A prosecutor can refer to the existence of other victims of crime in argument, as a plea for law enforcement. *Borjan v. State,* 787 S.W.2d 53, 57 (Tex.Crim. App.1990). What cannot be argued is that other victims of this defendant have been outlined in chalk on the streets of El Paso. That is, the argument cannot be phrased, directly or indirectly, "that 'kids are dying in the streets' at the hands of the appellant, and you as the jury must punish him for those deaths." See *id.* The prosecutor's comment in this case, however, was directed to the community in general, and was not a direct or indirect attempt to connect the appellant to other gang murders. As such, we do not consider it improper.

Even assuming the argument was improper, when an instruction to disregard is given, the trial court's denial of a mistrial is error only when the argument is extreme, manifestly improper, injected new and harmful facts into the case, or violated a mandatory statutory provision and was thus so inflammatory that its prejudicial effect cannot be cured by a judicial instruction to disregard. *Long v. State,* 823 S.W.2d 259, 267 (Tex. Crim.App.1991), *cert. denied,* — U.S. —, 112 S.Ct. 3042, 120 L.Ed.2d 910 (1992); *Harris v. State,* 866 S.W.2d 316, 326 (Tex.App.—San Antonio 1993, pet. ref'd). If the instruction given can be said to have removed the prejudicial effect of the improper comment, no error results from the overruling of a motion for mistrial. *Washington v. State,* 822 S.W.2d 110, 118 (Tex.App.—Waco 1991), *rev'd on other grounds,* 856 S.W.2d 184 (Tex. Crim.App.1993); see *Long,* 823 S.W.2d at 267. We hold that the instruction to disregard cured the improper argument.

We must still examine the improper argument to determine if it represents harmful error. Reviewing error pursuant to the harmless error rule, we look at the following factors:

(1) the source of the error;

(2) the nature of the error;

(3) whether or to what extent it was emphasized by the State;

(4) the probable collateral implications of the error;

(5) the weight a juror will probably give to the error; and

(6) whether declaring the error harmless would encourage the State to repeat it with impunity. *Harris,* 790 S.W.2d at 587.

Guided by the above factors, and any other considerations suggested by the facts of the case, the error and all its effects must be isolated. *Id.* at 588. The determination then is whether a rational trier of fact might have reached a different result if the error and its effects had not resulted. *Id.* Examined in light of this standard, we believe the error, if any, presented is harmless.

 The next argument the appellant found objectionable followed immediately after the preceding exchange. The prosecutor stated:

MR. MEDRANO: This 14–year–old died in the streets of this community and he died at the hands of Eddie Laca and at least five people that he won't tell you their names and this community has got to know what's going on in its community so that it can stop it.

I didn't do it. It wasn't my fault I had to call Eddie Keeder's mother to identify his picture. It's over there. In that glass house right over there.

These gang members who think they have taken over this community.

MR. DEKOATZ: Again object to him going outside the record. Seeking a conviction on evidence that is not before this jury.

THE COURT: Overruled.

Again we note the four proper areas of jury argument: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) answer to argument of opposing counsel; and (4) a plea for law enforcement. *Alejandro v. State*, 493 S.W.2d 230, 231–32 (Tex. Crim.App.1973). The prosecutor's argument is clearly a plea for law enforcement, for the community to enforce the laws against the gangs, and is therefore proper. The trial court correctly overruled the objection. Appellant's eighth point of error is overruled.

### E. Refusal of "Right to Arm" Instruction

 Appellant's ninth point of error asserts that the trial court erred in refusing to instruct the jury on appellant's right to arm himself. Appellant and the State agree that such an instruction may be given only where the charge places some limitation on the accused's right of self-defense, such as a charge on provoking the difficulty. *Williams v. State*, 580 S.W.2d 361, 363 (Tex.Crim.App. [Panel Op.] 1979); *Young v. State*, 530 S.W.2d 120, 121 (Tex.Crim.App.1975). The State maintains that a self-defense charge is a necessary predicate to the request of a right to arm instruction. No charge on self-defense was included in the jury charge. Appellant directs us to no authority authorizing the instruction under these facts, and the Court has failed to find such in its own search. The "right to arm" doctrine encourages a "Wild West" style of dispute resolution at gunpoint which we decline to extend. Appellant's ninth point of error is overruled.

### F. Evidence of Unadjudicated Extraneous Offense

Appellant's tenth point of error asserts that the trial court erred in the punishment phase by entering his confession into evidence over objection. Appellant objected to the admittance of his confession during the guilt phase on the grounds that it violated Rule 404(b) of the Texas Rules of Criminal Evidence as evidence of an unadjudicated extraneous offense. The State admitted all the evidence and exhibits from the guilt phase at the beginning of the punishment phase. To this the appellant made the "same objections." Appellant asserts that the following excerpt from his confession is evidence of an unadjudicated extraneous offense: "It was about 11 o'clock when we went to ISELA's apartment. When we were leaving, there was about 30 to 40 guys from Logan Heights. I recognized one of them when we were in detention together. His name is GABBY RAMIREZ. GABBY is the one who started everything because he recognized me. GABBY and I had were [sic] in a fight when we were in detention."

 To constitute an extraneous offense, the evidence must show a crime or bad act, and that the defendant was connected to it. *Lockhart v. State*, 847 S.W.2d 568, 573 (Tex.Crim.App.1992), *cert. denied*, —— U.S. ——, 114 S.Ct. 146, 126 L.Ed.2d 108 (1993); *McKay v. State*, 707 S.W.2d 23, 32 (Tex. Crim.App.1985), *cert. denied*, 479 U.S. 871, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986). This necessarily includes some sort of extraneous conduct on behalf of the defendant which forms part of the alleged extraneous offense. *Harris v. State*, 738 S.W.2d 207, 224 (Tex. Crim.App.1986), *cert. denied*, 484 U.S. 872, 108 S.Ct. 207, 98 L.Ed.2d 158 (1987). If the evidence fails to show that an offense was committed or that the accused was connected to the offense then it is not evidence of an unadjudicated extraneous offense. *McKay*, 707 S.W.2d at 32; *Yancey v. State*, 850 S.W.2d 642, 644 (Tex.App.—Corpus Christi 1993, no pet.). Here, appellant asserts that by admitting into evidence through the confession that he had been in *detention*, the trial court admitted evidence of an unadjudicated extraneous offense. That statement, however, shows nothing in regard to what, if any, offense had been committed by appellant. As such, the evidence that he had been in detention is not evidence of an unadjudicated extraneous offense. Appellant's tenth point of error is overruled.

### II. CONCLUSION

Because we have overruled all of appellant's points of error, we affirm the judgment of the trial court.