

# IN THE
# TENTH COURT OF APPEALS

### No. 10-07-00311-CR

**MICHAEL DEWAYNE YOUNG,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the 85th District Court
Brazos County, Texas
Trial Court No. 06-04154-CRF-85**

## MEMORANDUM OPINION

A jury convicted Michael Dewayne Young of murder and sentenced him to life in prison. In a single issue, Young argues that he was denied due process and due course of law because the State admitted multiple photographs into evidence that were more prejudicial than probative.[1] We affirm.

---

[1]    Although Young's issue asserts due process and due course of law violations, his argument concerns the admissibility of the photographs under the Rules of Evidence.

**STANDARD OF REVIEW**

A trial court's decision to admit or exclude evidence is reviewed for abuse of discretion. *See Jones v. State,* 944 S.W.2d 642, 651 (Tex. Crim. App. 1996). Relevant evidence is admissible, unless its "probative value is substantially outweighed by the danger of unfair prejudice." TEX. R. EVID. 403. The following factors are relevant to this determination: the number of exhibits offered, their gruesomeness, their detail, their size, whether they are black and white or color, whether they are close-up, and whether the body depicted is naked or clothed. *Gallo v. State*, 239 S.W.3d 757, 762 (Tex. Crim. App. 2007). "The availability of other means of proof and the circumstances unique to each individual case must also be considered." *Id.* After evaluating these factors, we consider: (1) the inherent probative value of the evidence; (2) the potential of the evidence to impress the jury in some irrational, but nevertheless indelible way; (3) the time the proponent needs to develop the evidence; and (4) the proponent's need for the evidence. *Reese v. State*, 33 S.W.3d 238, 240-41 (Tex. Crim. App. 2000).

**ANALYSIS**

Young was accused of murdering Mary Neeley by stabbing her with a knife forty-two times. During the attack on Neeley, he stabbed Maxie Taylor, Neeley's boyfriend, twelve times. Young claimed self-defense. Over Young's objections that the probative value was outweighed by its prejudicial effect, the trial court permitted the State to admit several photographs into evidence.

## Family Photograph

During the testimony of Jordon King, Neeley's neighbor, the State showed King a photograph of Neeley and her son and asked whether the photograph constituted "a fair and accurate depiction of what [Neeley] looked like back in May -- or April and May of 2006." King responded affirmatively.

Young argues that this photograph was neither relevant nor probative, "intended to inflame the jury," "designed to impress the jury in an irrational and indelible way," and "sway[ed] the jury with the idea that Ms. Neeley's son was another victim." However, after the photograph was admitted, Taylor testified, without objection, that the photograph depicted Neeley and her son.

To preserve a complaint for appeal, a party must lodge a timely and specific objection and obtain an adverse ruling. *See* TEX. R. APP. P. 33.1(a); *see also Tucker v. State*, 990 S.W.2d 261, 262 (Tex. Crim. App. 1999). The party must then either continue to object or "obtain a running objection." *Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim App. 2003). Young objected when the photograph was first admitted into evidence, but failed to object when Taylor testified about the photograph. Accordingly, he has failed to preserve his complaint for appellate review as to this photograph.

## Crime Scene Photograph

Also during King's testimony, the State admitted a photograph of Neeley's clothed body lying face up on the floor in a room of her apartment. King testified that the photograph is "not a pretty picture," but fairly and accurately depicts Neeley's body as he saw it on the day of her murder. King had rolled Neeley onto her back, as

instructed by the 911 dispatcher, to check for a pulse and perform CPR. He could not have performed CPR after seeing all the blood and Neeley's head felt like a "glob" of "old Jello." Officer Michael Kneese and Detective Steven Fry both testified that Neeley was lying on the floor when they arrived at the apartment.

In this close-up photograph, Neeley is covered with blood and cuts. Blood is also visible on various items in the room. Although the record contains a black and white copy of this photograph, the State attached a color photograph to its brief. Therefore, we presume the photograph was in color when presented to the jury. The photograph is about 8.5" x. 11" in size. It is the only photograph of Neeley at the crime scene.

The photograph is probative of both the manner of Neeley's death and Young's mental state, given that he argued self-defense. *See Ramirez v. State*, 815 S.W.2d 636, 647 (Tex. Crim. App. 1991); *see also Laca v. State*, 893 S.W.2d 171, 180 (Tex. App.—El Paso 1995, pet. ref'd). The State used very little time introducing the photograph. While gruesome, we cannot say that it has the potential to impress the jury in some irrational, but indelible way. It depicts "nothing more than the reality of the brutal crime committed" by Young. *Chamberlain v. State*, 998 S.W.2d 230, 237 (Tex. Crim. App. 1999).

### Autopsy Photographs

Using a diagram of Neeley's wounds, forensic pathologist Dr. Patricia Moore, who conducted Neeley's autopsy, testified that Neeley suffered a stab wound to her left frontal bone, left upper lip, mid to lower cheek, right upper neck, left side of the neck, and abrasions to the left side of her neck. The wound to the left side of Neeley's neck penetrated the larnyx and the wound to the frontal bone actually entered the bone, both

of which required a large amount of force. The wound to Neeley's larnyx severed her vocal cords and airway, preventing her from shouting or screaming during the attack. When the knife entered between Neeley's breasts, it struck her liver.

The State admitted three autopsy photographs, which Moore testified were accurate depictions from the autopsy. Photograph 19 is a close-up of Neeley lying unclothed and face up, from just below her breasts to just above the top of her head, on the autopsy table. A large gash is visible in her left shoulder. The wounds to Neeley's left frontal bone, left upper lip, mid to lower cheek, right upper neck, and left side of the neck are all visible. Her right eye is open and her left eye is swollen shut. The wounds have all been cleaned. In the State's brief, the photograph is about 8.5″ x. 11″ in size, but in the record, it is about 6″ x 8″ in size. The record does not contain any other autopsy photographs reflecting the totality of Neeley's injuries, but does contain a close-up of the wound to her frontal bone, wound to her upper lip, wound beneath her breasts, and two close-ups of the wound that punctured her larnyx.

Photograph 21 is a close-up of the stab wound that entered Neeley's larnyx. The wound has been cleaned. Photograph 21 constitutes one of two identical photographs depicting this injury. Photograph 23 depicts the puncture wound to Neeley's liver. It constitutes one of two identical photographs of the actual liver. The record also contains a close-up of the cleaned entry wound on the outside of Neeley's body. In the State's brief, photographs 21 and 23 are both about 8.5″ x 11″ in size, but in the record, they are approximately 6″ x 8″ in size. We presume that photographs 19, 21, and 23 were each presented to the jury in color.

The record does not indicate a substantial amount of time required to develop this evidence. Although the record contains duplicates of photographs 21 and 23, the photographs are limited in number, the wounds are clean, and the photographs are not particularly gory. *See Santellan v. State*, 939 S.W.2d 155, 172 (Tex. Crim. App. 1997) ("Although the two pictures of the gunshot wound to the shoulder may be somewhat duplicative, the wound is relatively clean and the pictures are not gory"). Moore's description of Neeley's specific wounds comprises approximately fourteen pages of the record.

Moreover, autopsy photographs are generally admissible, unless they depict the mutilation caused by the autopsy itself. *Rayford v. State*, 125 S.W.3d 521, 529 (Tex. Crim. App. 2003). The record indicates that the three photographs were necessary to assist Moore with explaining her testimony about Neeley's stab wounds, especially given the fact that no one injury caused Neeley's death. *See Saldano v. State*, 232 S.W.3d 77, 101-02 (Tex. Crim. App. 2007). "Visual evidence accompanying testimony is most persuasive and often gives the fact finder a point of comparison against which to test the credibility of a witness and the validity of his conclusions." *Chamberlain*, 998 S.W.2d at 237 (rejecting "premise that visual evidence accompanying oral testimony is cumulative of the testimony or that it is of insignificant probative value"); *see Gallo*, 239 S.W.3d at 762 (that the "jury also heard testimony regarding the injuries depicted does not reduce the relevance of the visual depiction" provided by photographs of those injuries).

Neither do the photographs have the potential to impress the jury in some irrational, but indelible way. They "depict what [Young] caused and what verbal

testimony properly described" and are "highly probative to show the full extent of the injuries [Young] inflicted on [Neeley]." *Saldano*, 232 S.W.3d at 101-02; *Gallo*, 239 S.W.3d at 763. They are "no more gruesome than would be expected in this sort of crime." *Gallo*, 239 S.W.3d at 763; *see Chamberlain*, 998 S.W.2d at 237.

### Photographs of Maxie Taylor

Dr. Jeffrey Erdner, who treated Taylor's injuries, testified that when Taylor arrived at the emergency room, his face and the stretcher were covered in blood. Erdner was concerned about Taylor's blood loss. According to Erdner, injuries to the head and face bleed more than other areas of the body. Using nine photographs, Erdner described Taylor's injuries.

Photograph 36 depicts a laceration on Taylor's face. Taylor is wearing an oxygen mask. Photograph 37 depicts Erdner suturing a laceration on the right side of Taylor's face. Photograph 38 depicts three lacerations to Taylor's left arm. These appeared to be defensive wounds. Photographs 39 and 40 depict a laceration between Taylor's thumb and first finger. This also appeared to be a defensive wound. Photograph 41 depicts lacerations to the left side of Taylor's neck and his left ear. Photographs 42 and 43 depict multiple lacerations to the left side of Taylor's scalp and forehead. Photograph 44 depicts the laceration to Taylor's back between his shoulder blades. Erdner was concerned that this wound may have punctured a lung.

Again, we presume that these were color photographs at trial. They are approximately 8.5" x 11" in size. Blood is visible on Taylor's face, ears, arm, hand, neck,

head, and back, as well as some towels that appear in a few of the photographs. They are all close-ups and are the only photographs of Taylor's injuries.

Only four pages of the record were devoted to Erdner's descriptions of the photographs. They assisted Erdner's descriptions of Taylor's injuries and his opinions regarding which injuries were defensive in nature. Thus, they are "highly probative to show the full extent of the injuries" Taylor suffered at the hands of Young, who had claimed self-defense. *Gallo*, 239 S.W.3d at 763. That the photographs accompany Erdner's testimony does not make them either cumulative or less probative. *See Chamberlain*, 998 S.W.2d at 237; *see also Gallo*, 239 S.W.3d at 762 ("Generally, a photograph is admissible if verbal testimony as to matters depicted in the photograph is also admissible" and verbal testimony does not reduce the relevance of visual evidence). Moreover, Taylor testified about the injuries he received during the attack and explained that scars remained from those injuries.

The photographs do not have the potential to impress the jury in some irrational, but indelible way. They merely reflect the result of Young's own actions and "what verbal testimony properly described." *Saldano*, 232 S.W.3d at 101-02. Like the autopsy photographs, they are "no more gruesome than would be expected." *Gallo*, 239 S.W.3d at 763; *see Chamberlain*, 998 S.W.2d at 237.

**Conclusion**

In summary, we conclude that the trial court did not abuse its discretion by admitting the complained of photographs, as their probative value was not outweighed by the danger of unfair prejudice. We overrule Young's sole issue and affirm the judgment.

                                                    FELIPE REYNA
                                                    Justice

Before Chief Justice Gray,
        Justice Vance, and
        Justice Reyna
Affirmed
Opinion delivered and filed September 17, 2008
Do not publish
[CRPM]