**The STATE of Texas, Appellant,**

v.

**Gabriela TERRAZAS, Appellee.**

**No. 08–95–00314–CR.**

Court of Appeals of Texas, El Paso.

Oct. 3, 1996.

Rehearing Overruled Oct. 23, 1996.

---

Jaime E. Esparza, District Attorney, El Paso, for Appellant.

Matthew DeKoatz, El Paso, for Appellee.

Before BARAJAS, C.J., and LARSEN and McCLURE, JJ.

## OPINION

BARAJAS, Chief Justice.

Appellee was indicted for the offense of tampering with a governmental record aris-ing out of alleged false entries made in appli-cations for government benefits under the Aid for Families with Dependent Children, food stamp and Medicaid programs. The trial court entered an order quashing and dismissing the indictment with prejudice and also entered an order suppressing Appellee's statement. The State appeals both orders. We reverse the orders of the trial court.

## I.  *SUMMARY OF THE EVIDENCE*

On September 15, 1995, the trial court held a pre-trial hearing on Appellee's motions. At the hearing, Appellee asserted that the in-dictment should be dismissed because the El Paso County District Attorney's Office re-ceived compensation. Appellee also alleged violations of Due Process and Due Course of Law, overbreadth, mistake of law and fact and a violation of fundamental fairness.

At the hearing, Appellee utilized the testi-mony of Donavon G. Gardner, the Chief Dep-uty Clerk for El Paso County. He testified that the civil files from his office showed that Appellee was the sole managing conservator of her three children.

Laura Galaviz testified in her capacity as the chief of the screening section of the El Paso County District Attorney's office. She related that "welfare fraud" type cases were referred to her from the Office of the Inspec-tor General of the Texas Department of Hu-man Resources. She usually dealt with an individual named Roberto Esparza, the Chief Inspector in El Paso for that office.

Galaviz stated that her office received compensation in the form of a payment of $433 for each case that was taken to court with a resultant conviction. She stated that with regard to her screening decisions, the potential compensation did not enter into her decision whether or not to accept the case. The witness related that there had been a marked increase in the number of welfare cases accepted between 1991 and 1994. However, she related that this increase in caseload was primarily due to a change in the El Paso County District Attorney's Of-fice policy as to the acceptance of such cases for prosecution. Galaviz testified that if she did not accept the case as a felony, she would

consider it for misdemeanor prosecution. The compensation to the El Paso County District Attorney's Office was identical whether the prosecution alleged a felony or misdemeanor violation.

Roberto Esparza, Regional Supervisor for the Office of the Inspector General of the Texas Department of Human Services, testified that a written contract existed between the Department of Human Services and the El Paso County District Attorney's Office. This contract provided that the funds of the United States Department of Agriculture were utilized for the prosecution of fraud cases passed through his agency for every "positive disposition" of a case by the District Attorney's Office. While the record shows no money was paid for a dismissal, the fee would be paid for a resulting deferred adjudication determination or a regular conviction. Additionally, the fee would also be paid for an acquittal from a contested trial.

Esparza then testified concerning certain phrases in the application an applicant fills out in order to receive benefits from the Department of Human Services. When questioned about the phrase, "[f]ill in the remaining blanks for everyone who lives with you, whether or not you consider them a member of your household" the witness stated that the applicant was to list every person living in the house so that the caseworker could verify the answers. Esparza stated that the caseworker interpreted the answers given and an incorrect interpretation could result in criminal liability. The witness related that the application for benefits contains warnings and the applicant is orally warned by the caseworker that the failure to provide accurate information could lead to criminal liability. He further noted that the application signed by Appellee contained written warnings that prosecution could result from giving false or misleading statements in applying for the various benefits. Esparza stated that there is a warning above Appellee's signature stating the penalty for perjury is applicable regarding untrue statements in the application.

Oscar Rodriguez testified that he was an investigator with the Office of the Inspector General of the Texas Department of Human Services. He was the investigator assigned to Appellee's case. Rodriguez stated that he was not a commissioned peace officer. He first became involved with the case when a Department of Human Resources caseworker referred the case to him based upon an allegation by Appellee's ex-husband that her children were not living with her. Appellee came into the witnesses's office and gave a written statement which stated that she did not report that her son Martin didn't live with her for several month in 1993. She also stated that she did not report this information within the required ten-day period.

Martin Terrazas, Appellee's ex-husband, was the last witness to testify. He related that he called the Department of Human Services in order to obtain benefits for two of his sons. He was told that the boys were listed on Appellee's case number and that he should call the investigations office. He then applied for benefits but this was denied due to a trial court order giving Appellee conservatorship of the children.

## II. DISCUSSION

### A. Jurisdictional Challenge

Appellee maintains that as the indictment was dismissed with prejudice, the State cannot appeal the court's decision. She analogizes this case to instances where the trial court finds the existence of entrapment as a matter of law at a pre-trial hearing. In those instances, the State has no right of appeal. *Taylor v. State*, 886 S.W.2d 262, 266 (Tex.Crim.App.1994). The entrapment defense is unique in that the Legislature specifically provided it may be tested and determined at a pretrial hearing. *Id.*, at 265. *See* TEX.CODE CRIM.PROC.ANN. art. 28.01, § 1(9)(Vernon 1989). TEX.CODE CRIM. PROC.ANN. art. 44.01(a)(1)(Vernon Supp.1996) provides that the State may appeal an order of the trial court if it dismisses an indictment. In *Taylor*, the Court of Criminal Appeals reasoned that a finding of entrapment as a matter of law at a pre-trial hearing had no effect upon the indictment and was, therefore, not a matter that could be appealed by the State. *Taylor*, 886 S.W.2d at 265. In the present case, the court ruled in its order

that, "Defendant's motion to quash indictment is in all things granted, and the indictment is dismissed with prejudice."[1] Clearly this is a matter that had an effect on the indictment and was appealable by the State. *See State v. Frye*, 897 S.W.2d 324, 325 (Tex. Crim.App.1995).

## B. *Dismissal of the Indictment*

■ In Point of Error No. One, Appellant contends that the trial court abused its discretion by granting Appellee's motion to dismiss the indictment. Initially, Appellant maintains that the dismissal of the indictment was not authorized by law. After the close of evidence at the hearing, the trial court ruled that the State had bargained away its discretion in accepting or declining prosecutions by accepting payments from the Department of Human Services. It dismissed the indictment with prejudice.

■ When a trial court dismisses an indictment with prejudice, the effect of such a dismissal is to instruct the prosecuting authority not to proceed with future charges arising out of the same offense. *State ex rel. Holmes v. Denson*, 671 S.W.2d 896, 900 (Tex. Crim.App.1984); *Gaitan v. State*, 905 S.W.2d 703, 706 (Tex.App.—Houston [14th Dist.] 1995, pet. ref'd). A trial court may not dismiss an indictment with prejudice absent the consent of the prosecutor except in certain circumstances where the trial court is so authorized by constitution, statute, or common law. *State v. Johnson*, 821 S.W.2d 609, 612 (Tex.Crim.App.1991); *Gaitan*, 905 S.W.2d at 704 n. 4. The trial court is authorized to dismiss an indictment with prejudice under the following circumstances: (1) the trial court sets aside, quashes, or dismisses an indictment for a defect of form or substance; (2) the trial court dismisses an indictment when a defendant has been denied the constitutional right to a speedy trial; or (3) pursuant to Article 32.01 of the Code of Criminal Procedure, an accused is detained and *no charging instrument is properly pre-*

sented. *State v. Johnson*, 821 S.W.2d 609, 616 n. 2 (Tex.Crim.App.1991); *Gaitan*, 905 S.W.2d at 706 n. 4. There is one other circumstance permitting dismissal with prejudice. If prosecutorial misconduct prejudicially violates a defendant's right to counsel, and the exclusion of the evidence will not cure the prejudice, then dismissal with prejudice may be appropriate. *State v. Frye*, 897 S.W.2d 324, 330 (Tex.Crim.App.1995); *Gaitan*, 905 S.W.2d at 706.

The court's action in the present case does not fit any of the three *Johnson* circumstances and we are not able to perceive any Sixth Amendment implications that would allow a dismissal with prejudice. Accordingly, the trial court was without authority to dismiss the indictment with prejudice. Appellant's Point of Error No. One is sustained.

## C. *Suppression of Appellee's Statement*

In Point of Error No. Two, Appellant contends that the trial court abused its discretion in suppressing Appellee's statement. In a written motion, Appellee sought to suppress all documents executed by her that the State would use in its case. She alleged that they should be suppressed because she was not provided counsel to explain the documents and her potential criminal liability concerning the documents. She also sought to suppress the documents due to her allegation that she was forced to back date certain documents in order for the State to prove its case against her. She alleged the same grounds at the pre-trial hearing.

Oscar Rodriguez, the investigator for the Department of Human Services, testified that he investigated a complaint from Appellee's ex-husband which indicated that the couple's children were living with him during the period from January of 1993 through September 1993. Sometime in the middle of January 1995, he notified Appellee that he was reviewing her Assistance for Families with Dependent Children (AFDC) and food stamp case and he needed to speak with her

---

1. We note that the trial court later entered a superseding order which rescinded the order dismissing the indictment. However, once the trial court dismissed the indictment, it had no jurisdiction to enter the superseding order. *Miller v.*

*State*, 909 S.W.2d 586, 592 (Tex.App.—Austin 1995, no pet.); *Prochazka v. State*, 878 S.W.2d 230, 231 (Tex.App.—Corpus Christi 1994, no pet.).

in order to clear up some problems. He spoke with her in his office on January 25, 1995 at about 1 p.m. When she arrived at his office, Rodriguez asked for her identification and explained to her that there was an allegation regarding where her children were living and he then advised her of her rights.[2] In response to a question regarding at what time Appellee was advised of potential criminal liability, the following exchange occurred at the hearing:

DEFENSE: Okay. What exactly did you tell her that would lead her to believe that she might suffer criminal liability?

WITNESS: Well, I had told her that there was a violation in regards to policy. That we had information that the children were not actually living with her, and that was a violation of policy, and she had gotten AFDC, which is a money grant, Medicaid, and food stamps.

DEFENSE: Okay.

WITNESS: And if the children were not living with her, she was not entitled to the portions that the children received.

DEFENSE: Okay. But where did you tell her that she might suffer criminal liability from that?

WITNESS: Well, you mean as far as a violation?

DEFENSE: No, as far as that she might face an Indictment by a grand jury.

WITNESS: Okay. Well, I told her that the case would be submitted to the district attorney's office.

DEFENSE: When did you tell her that?

WITNESS: I told her that towards the end of the interview.

DEFENSE: Okay. After you had already gotten the information right?

WITNESS: Right.

DEFENSE: Oh, okay. So, initially, though, you didn't really tell her that you were investigating her for something that could potentially lead to a grand jury indictment, right?

WITNESS: I'm not sure it would at that point in time when we start.

DEFENSE: Okay. Why not?

WITNESS: Because I had not really finished the investigation as of yet at that point in time. There had been something else that I needed to clear up.

DEFENSE: Okay. So what happens next?

WITNESS: Well, I told her that the case would be submitted to the district attorney's office, and it would be up to them.

DEFENSE: But that's at the ending, right?

WITNESS: At the ending.

At the beginning of the interview, Rodriguez asked her about the status of her children. He told her that he needed to know if her children had been living with her all the time because he had information that indicated otherwise. He showed her the applications for assistance that she had filled out claiming that her three children were living with her. Appellee initialed both of the assistance applications, one dated March 17, 1993, and the other dated November 16, 1993 and she dated them January 25, 1995, the date of the interview. Rodriguez stated that applications for benefits do not contain *Miranda* warnings and applicants are not provided with attorneys when filling out the benefits application.[3]

Rodriguez then took a statement from Appellee. With regard to the taking of the statement, the various following exchanges occurred:

DEFENSE: Okay. Now, as far as on the voluntary statement here, what is claimed to be her voluntary statement—

WITNESS: Yes, sir.

DEFENSE:—as far as—is there anything more that you would like to say in your statement, the written-in information, as well as did you fail to report any changes between applications and interviews, if so what changes. Now, as far as the contents

---

**2.** Rodriguez testified that he was not a commissioned peace officer.

**3.** The applications do contain warnings in both English and Spanish detailing the penalties for

giving wrong or misleading information when applying for benefits. Included in the warning is the possibility of criminal prosecution.

of those, did you tell her what to put in there?

WITNESS: No, I don't tell her what to put in there. I answer the questions, but I don't tell them what to put on there.

DEFENSE: What do you mean you answer the questions?

WITNESS: Well, if they ask me a question, you know, what do I do here, or on dates or whatever, but I don't exactly tell them what to put on there.

DEFENSE: Well, how on earth would they know what to put in there, then?

WITNESS: Well, I tell them, this is what the allegations are, and this is what has to go on the voluntarily [sic] statement. Verbatim, I do not.

DEFENSE: Okay. But you basically say, this is what has to be put in there, right?

WITNESS: That's correct.

DEFENSE: So you pretty much kind of explain to her what she is supposed to put in there, right?

WITNESS: That's correct.

On cross-examination, the trial court inquired:

THE COURT: What part of that stuff is the stuff that you told her had to be in there?

WITNESS: I'm sorry, Your Honor?

THE COURT: I thought your previous testimony was that some of the stuff that was in there was stuff that you told her had to be in there. What of that information did you tell her had to be in there?

WITNESS: Well, the allegations that—

THE COURT: Well, just read the part of the statement that you told her had to be in there.

WITNESS: I did not report this information within ten days.

THE COURT: Okay.

STATE: Sir, did you ask her questions abut where her children where residing during these dates between March 17th of 1993 and the taking of this statement on January 25th of 1995?

WITNESS: Yes, I did.

STATE: And this was after you had warned her of her rights?

WITNESS: That's correct.

STATE: Okay. All those rights that are on the warning form, the advisement of waiver of rights form which is form 4801?

WITNESS: That's correct.

STATE: Did she advise you that her children were, in fact, with the father of the children through those months that are stated here, of June through September, 1993, and November of 1993?

WITNESS: Yes, she did.

STATE: Okay. And then in stating on there those things that the judge has just asked you, you said that had to be on the statement, correct?

WITNESS: Yes.

STATE: That was in response to a question, did you fail to report any changes—

WITNESS: She failed to report within the ten days.

STATE: Okay. And then it was—that was what you were referring to that had to be on here?

WITNESS: Yes.

STATE: Okay. Did she advise you that that was, in fact, correct?

WITNESS: Yes, she did.

Prior to taking Appellee's statement, Rodriguez advised her of her *Miranda* rights as codified in Tex.Code Crim.Proc.Ann. art. 38.22(3)(a)(Vernon 1979). He testified that she did not wish to terminate the interview or consult with an attorney. Rodriguez stated that the statement was not the result of promises or threats and that she was given an opportunity to read her statement and make any changes. He stated that he never handcuffed Appellee, and that she was free to leave at all times and she was never in custody. The interview took approximately thirty minutes.

The trial court entered an order suppressing the written statement of Appellee. In an oral statement at the hearing, the trial court stated that was granting the motion to suppress as to the written statement of Appellee because the statement was made involuntarily.

A trial court has broad discretion in determining the admissibility of evidence, and we will not reverse absent a clear abuse of discretion. *Allridge v. State,* 850 S.W.2d 471, 472 (Tex.Crim.App.1991), *cert. denied,* 510 U.S. 831, 114 S.Ct. 101, 126 L.Ed.2d 68 (1993). On a motion to suppress evidence, the trial judge is the sole and exclusive trier of fact and judge of credibility of witnesses, including the weight to be given their testimony. *Romero v. State,* 800 S.W.2d 539, 543 (Tex.Crim.App.1990); *Cannon v. State,* 691 S.W.2d 664 (Tex.Crim.App.1985), *cert. denied,* 474 U.S. 1110, 106 S.Ct. 897, 88 L.Ed.2d 931 (1986); *Laca v. State,* 893 S.W.2d 171, 177 (Tex.App.—El Paso 1995, pet. filed); *Lee v. State,* 893 S.W.2d 80, 84 (Tex.App.—El Paso 1994, no pet.); *Chavarria v. State,* 876 S.W.2d 388, 391 (Tex.App.—El Paso 1994, no pet.). In that regard, the trial court was free to believe or disbelieve the testimony of each of the State's witnesses as well as the testimony of Appellant. We do not engage in our own factual review but merely decide whether or not the trial judge's findings of fact are supported by the record. If the findings are supported by the record, we are not at liberty to disturb them. Thus, on review, we only address the question of whether the trial court improperly applied the law to the facts. *Romero v. State,* 800 S.W.2d at 543; *Laca v. State,* 893 S.W.2d at 177; *Lee v. State,* 893 S.W.2d at 84. Should the trial judge's determination be correct on any theory of law applicable to the case, it will be sustained. *Romero,* 800 S.W.2d at 543; *Laca v. State,* 893 S.W.2d at 177; *Lee v. State,* 893 S.W.2d at 84. This principle holds true even if the trial court gives the wrong reason for its decision, especially when the decision concerns the admission of evidence. *Romero v. State,* 800 S.W.2d at 543; *Dugard v. State,* 688 S.W.2d 524 (Tex.Crim.App.1985). The Court of Criminal Appeals has held that as part of our review, we must be deferential to the trial court's judgment, not only as to the historical facts, but also as to the legal conclusions to be drawn from the historical facts so long as it appears the trial court has applied the correct standard of law to those historical facts. We should reverse the trial court's decision only for an abuse of discretion; that

is, only when it appears that the trial court applied an erroneous legal standard, or when no reasonable view of the record could support the trial court's conclusion under the correct law and the facts viewed in the light most favorable to its legal conclusion. *DuBose v. State,* 915 S.W.2d 493, 497–98 (Tex. Crim.App.1996).

The determination of whether a confession is voluntary under the Due Process Clause of the Fourteenth Amendment of the United States Constitution is based upon the examination of the totality of the circumstances surrounding its acquisition. *Armstrong v. State,* 718 S.W.2d 686, 693 (Tex.Crim.App.1985). Some factors in determining if an accused's will has been overborne are: length of detention, incommunicado or prolonged interrogation; denying access of a family member; refusing a defendant's request to telephone a lawyer or family member; and physical brutality. While the evidence in this case does not appear to demonstrate any of these factors, Appellee suggests that Rodriguez told Appellee what to put in her statement and this constituted official overreaching or coerciveness. At the hearing, the trial court showed some interest in this contention. However, the evidence indicates that Appellee agreed at the time that these contentions were true. If a confession relates what is told to a peace officer, the confession is still voluntary albeit it is not in the exact words of the defendant. *Bell v. State,* 724 S.W.2d 780, 793 (Tex.Crim.App.1986), *cert. denied,* 479 U.S. 1046, 107 S.Ct. 910, 93 L.Ed.2d 860 (1987); *Carrillo v. State,* 634 S.W.2d 21, 23 (Tex.App.—El Paso 1982, no pet.).

In the present case, we are unable to find any reasonable view of the record that supports the courts granting of the motion to suppress. As Rodriguez was the only witness to relate the events surrounding the taking of the statement, we are unable to find any element of coercion that overrode Appellee's exercise of free will. Accordingly, it was an abuse of discretion to grant Appellee's motion to suppress the statement. Appellant's Point of Error No. Two is sustained.

Having sustained each of Appellant's points of error, we reverse the orders of the trial court and remand the cause for trial.